All right. Good morning. Our final case for the day is Mansfield v. Williamson County. We will first hear from the appellant. Mr. Edwards, whenever you're ready, you may begin. Thank you. May it please the court. This appeal presents summary judgment evidence that Williamson County violated Troy Mansfield's right to due process in two specific ways. Essentially, we are here because magistrate judge in the case of Mansfield v. Williamson County decided that no due process violation occurred under the fact pattern presented its summary judgment. That was an error for two specific reasons. First, the evidence showed that Williamson County prosecutors knowingly and repeatedly threatened to convict Mr Mansfield with fictional evidence for the purpose of coercing Mr Mansfield to plead guilty involuntarily. That is a violation of due process that has been well settled under Supreme Court precedent since the early 1940s. In addition, these same prosecutors also flagrantly violated a court order to disclose exculpatory evidence, violated Texas law requiring the disclosure of exculpatory evidence and, um, violated the construct of Brady v. Maryland and the rationale behind Brady v. Maryland by intentionally withholding evidence of factual innocence for Mr Mansfield for the very same purpose. If the court sustains error on either of to Williamson County should be reversed. I want to take a step back and talk about what really happened here. Mr Mansfield was arrested for the crime of sexual indecency of a child based on based on a four year old victim's statement. Alleged statement. Over the course of the prosecution, it came to that this did not happen or that there was evidence that it did not happen. In particular, the little girl told prosecutors on a number of occasions this did not happen. Mr Mansfield did not do this. Nothing happened. If any crime were committed, maybe maybe the little boy did it. The situation that Mr Mansfield was in, he was a parent watching his kids. There was a neighbor over and there was an allegation of abuse. That's the situation. The sole witness to this or the sole complaining witness was a little girl who was barely competent to testify in and of herself. Okay, why? Okay. In addition to that, knowing that this was the case, knowing that this little girl had recanted her allegations, knowing that she had supplied evidence of factual innocence, did the prosecutors dismiss the cases they were ethically bound to do? No. Now it's just not our opinion that they were ethically bound to dismiss the that any ethical prosecutor would have, in fact, dismissed the case upon learning the allegations that were contained in the case. File notes. Several. Let me ask you a question. Um, it strikes me straight away that that, uh, there are two roads can be traveled here. One of the one you're traveling. The other is, uh, have you as the due process, which I think you're also probably the first road that is the Brady argument would seem to be foreclosed to you. The due process argument is quite different. Um, and I want to try to get some flesh on that. Um, as I read the this record, the district court ordered that it's it's undisputed that when they asked as well, there wasn't any evidence to be disclosed. But they counter to that is that, yes, there was, uh, a great deal. And they so the question of due process is it travels on it on a somewhat different path? Because now you have a flagrant disregard of the state court's order itself. Uh, and by a state official put aside the moment now for for money on the issues which are deeper, much deeper road for you to travel. But with this zero in on the due process thing, because that's the only pathway that I see. If you have some other argument, I'm not trying to cut off your argument. But at least for me, um, I was concerned about the due process aspect. There's a strong argument that that is not foreclosed by the decisions of this court. It's something quite different than getting into the problem of plea bargaining and rights to lie about, et cetera, et cetera. Um, it's something else when there is a flagrant disregard of the state order to produce. That's not a Brady problem. That's a violation of state order and usually violations of state of state law in that regard or capture due process procedure due process. And I won't get that on the table now because to me, that's, uh, that's the larger. If there is an issue in the case, that's it. At least for sure. Your Honor, Your Honor, we concede that that is the much stronger argument here. Again, we're making an argument on the pure failure to disclose exculpatory evidence based on Brady versus Maryland and trying to distinguish the Alvarez case and its progeny on the basis that one of one of the one of the seminal cases upon which Brady was was founded was the wild opinion in the wild opinion actually, um, you know, had to do with the suppression of evidence at the police stage. And and because wild is an opinion that in from 1960 that predates Brady, we think that this court, should it be inclined, could utilize that as precedent from the Supreme Court in order to distinguish Alvarez and not directly violate any prior panel decisions. But I completely agree that the violation of a state order which vests a liberty interest does does does support an independent grounds for due process. And that was as well as rendering the plea involuntary and invalid. And as this court has noted, the Lewis case from 1979 has mandated disclosure of evidence, exculpatory evidence in Texas state courts, and Texas state courts have interpreted that. Let me go back to the beginning of this, your preservation of that argument to to Magistrate Lane. As I read the transcripts of your argument, you made that argument, page 13 or 14 of the first hearings, the transcript there. But there's some question as to whether or not you, you really treated your due process argument as part of an overall umbrella of the Brady argument. In other words, there weren't two paths, you travel, you only travel one. So that's, you need to address. Thank you, Your Honor. As a practical matter, there was no surprise to the defendant that we were traveling down both paths. As a as an actual matter, the court asked us, doesn't Alvarez control? And no, we said, this is the deception as well, separate and apart from that. But even if we were limited to our actual complaint, paragraph seven of the complaint states, as a consequence of the closed file policy, which is the policy issue in the Menel case, or one of them, prosecutors were able to lie about evidence that did not exist and prevent Mansfield from discovering the evidence the district crime for which he was accused. Now, lies about evidence that do not exist, are not Brady versus Maryland violations, they are separate due process violations. And Mr. Edwards, let me ask you about that. I know this case is about prosecutors. But if the police have a murder suspect, and they look there, they have them at the interview room, and they say, Oh, we found your prints on the gun. And there's an eyewitness out there who says you're the shooter. Both of those are lies. Is that a constitutional and the person the suspect confesses in light of those lies, which leads to a guilty plea? Or is that unconstitutional? Those lies about the evidence? Well, I would submit that under under Whaley, it would be the qualifier is it depends whether or not those lies are disclosed to the prosecution, and then the prosecution discloses them to the, to the defendant. I think that the law well, I don't agree with it allows police officers to lie, but you cannot hide that hide those lies later on from the from the defendant before he please. He's going to undo that that confession, that confession wouldn't be rendered involuntary just because they lied. I mean, assuming no other misconduct. Yeah. Well, you know, I think I think the Whaley case actually does hold that the FBI in that case, they they lied, they, they threat, they threatened to publish false statements. If the if the lies are coercive enough to cause to cause the plea to be involuntary in a court finds that, then I think I think I guess it depends on the nature of the lies. prosecutors, though, have a clear duty not to lie. And, again, if the way the Whaley case, which is the Supreme Court, what happened in the Whaley case was that FBI agents threatened to publish false statements and manufacture evidence, which is what happened in in actuality here, although Judge Lane tried to distinguish it, really, it's it's here. So a number of the prosecutors told the defense attorney that this little girl who they knew had recanted her confession, and said that Mr. Mansfield had not done it. Again, sexual assault of a child through the anus had not done it. They said that this girl was adamant that she had done it. That that's that's an outright lie that caused Mr. Mr. Seahall, the person's attorney to encourage him to plead. I mean, again, the state court tribunal found that this confession, or what do you do with Amaya of our on board? I'm sorry, sorry, I didn't hear you do with our on board decision and Amaya. I think Amaya is I think Amaya is helpful because Amaya Amaya is a judge leading the leading the leading the defendant to not understand and plead guilty when he otherwise wouldn't have and and creating a, you know, a falsity. The falsity here comes from the prosecutors. Anytime you have a falsity that leads to an unknowing and involuntary our court it also said in his recent decisions that for some period of time that the prosecutors do not get out of grounds when they when they when they lie to the defendant. It's not a quote Brady. It's the Brady Doctrine. Brady Doctrine is a trial right. And anything you have before the end, whatever. So they're free to lie. That's the argument. Now, Mike, except for the moment that that is the law of the circuit. My question to you is, is the question of when they when the state court has ordered the district attorney to disclose. Now, you know, you have a primitive court order that is violated deliberately by the state officials themselves. Now that that there's a arguably a due process argument that does not touch on the basic concept of leaving alone the trial rights and so a body of cases that you have. You can lie to the guy and tell him you got to go off and he confesses and the confession is good. Justice Black told us that. Well, again, I think I think you're hit on the right point, which is throughout the pleadings that that Williamson County prosecutors repeatedly violated court orders. Ken Anderson had done it previously, and they did it in this particular case. And that is that is clearly in the complaint in a variety of makes. What makes the lying different in this particular case is the order to disclose the exculpatory evidence. They're not only they're taking it, they're violating a court order and taking advantage of that violation to fraudulently induce Mr Mansfield to plead guilty when they know, in fact, no crime has been committed. Yeah, Mr Edwards, I have a question and I'll give you a couple minutes to answer it and I'll give that extra time to the other side as well. It's a question about the record. Um, and in particular, whether there's in the record, I didn't see it. A transcript of the plea hearing in state court when your client pled guilty years ago in federal court. The plea hearings have many proffer what the trial evidence would be. And so in a case like this, if this were in federal court and the government then also tells the court we have this witness four year old saying X when, in fact, they know she isn't gonna say X. That that would arguably be a violation. I never know how to say the name of the case, but not the way presenting false testimony in court. Um, I know state courts obviously have the same due process requirements for please. My understanding. It's a it's a more abbreviated procedure. But is there anything you in the record about the plea hearing where the government proffered what its evidence was against your client? There is nothing in the record in that regard, Your Honor. Other than but what I think is very important about that is that they knowingly allowed Mr Mansfield to plead guilty to a crime. They knew they had evidence he did not commit, and they did that as part and parcel of practices at the county. They this is just we don't know what we don't know what was said at the plea hearing, or there, in fact, wasn't this this factual proffer that there would be in those cases. I'm not aware of any evidence that there was, in fact, a plea was found to be unknowing, invalid and involuntary because of of the court order. And I think Judge Higginbotham's point about the court order and the interest that that attaches, um, does also contribute to this being a due process case. And I do want to make clear that Waley vacated this. I'm sorry. What was that for basis for the state's setting aside with the proceedings? The core basis for the state rendering the plea involuntary and invalid was the failure to disclose exculpatory evidence in violation of Texas law in violation of the court order requiring it. But Texas courts, Texas Court of Criminal Appeals does recognize a Brady right even at the plea stage, right? That's all discussed in Alvarez. We don't need to rehash that. Texas Court of Criminal Appeals does that. And and significantly, Williamson County conceded it not just at the at the hearing invalidating the plea, but in every deposition, their corporate witnesses said this was a Brady violation and this required us to disclose this. And it was a due process violation. Every the district attorney, the former first assistant who was directly involved, acknowledged that this would be a due process violation as well as the current corporate witnesses at Williamson County. So everyone agrees. The oddity here is that the Fifth Circuit is on a different playing field with regards to this in light of Alvarez at all. All right, well, let's let's say that my colleagues have any other questions. We'll we'll hear again from you in your rebuttal. And Kim, if you can give the county three extra minutes, if Mr Thompson decides he wants to use all that whenever you're ready, you may begin, Mr Thompson. Good morning. May it please the court. Sorry we can't all be together in New Orleans this morning, but I appreciate you accommodating us remotely under the circumstances. As Judge Higginbotham has alluded to, this was a case that was initially and very deliberately chartered down one particular path and then at one point of necessity forked to attempt to chart a different path after this court issued its en banc decision in Alvarez. But I understand that the court is understandably concerned about the prospect of the case proceeding on the path other than the path that is foreclosed by Alvarez. And that path was actually presented by the complaint in the case, although the county disputes that for the reasons set forth in our brief. And this this theory of liability ultimately can be resolved not on the basis of the constitutional issue, but on the basis of what I've come to refer to as the idea of the paycheck trap of liability that Mr stuff. If you keep your voice up a little bit, I'm not sure it's your voice or the system, but thank you. Yes, sir. I'll do my best. Um, so I like to start with this idea of a paycheck trap theory of liability, which is the idea that a municipal entity like a county may be held liable for the conduct of state prosecutors carrying out their state functions based simply on the fact that the municipal entity is the one who signed the paycheck. And this, of course, implicates a number of the cases that are discussed in the briefs, starting with crane versus texas through Turner versus Upton County and on through Estevez versus Brock, the cases that it cites. But the story actually starts a bit earlier than that. The through line in the legal reasoning starts earlier than that. A decade before this court decided crane versus texas, the Supreme Court decided a case called Embler versus Pacman. I don't believe the case is cited in the brief. So for the court's benefit, the citation is 4 to 4 U. S. 409. It's a 1976 decision from the Supreme Court. The court may be familiar with it, at least in passing. This is the seminal case in which the Supreme Court extended the common law doctrine of absolute prosecutorial immunity claims brought under Section 1983. And when the court extended that form of immunity, it adopted what has been come to be referred to as a functional approach to that analysis. The court has said the concern is about protecting the office, not the occupant of the office. And so the analysis turns not on the identity of an individual as a state prosecutor or as a state agent, but upon the function that the individual is performing. And what the court said in Embler is if an individual is performing a core prosecutorial function that is a function that places the prosecutor in the traditional role of an advocate, then the state is ultimately the one that is responsible for that conduct. But the prosecutor himself is immune from liability, and they didn't sue the actual prosecutors here. And I'm assuming it's because of everything you said about absolute prosecutorial immunity. So what's the connection with the county's defense here? You're right that that's why the individual district attorneys have not been sued here, is that they would be entitled to absolute immunity. And the legal reasoning that entitles them to that immunity is the same line of reasoning that harmonizes this court's decisions from crane through Upton and on through this versus Brock. And that is an analysis that focuses on the function that the individual is performing, not upon their their identity as a county rid county and state agent. So if we look, for example, to Estevez versus Brock, the allegation there was that the county had a policy that directed its district attorneys and its prosecutors to use peremptory strikes in a manner that was discriminatory. It was not a case that was simply about one bad actor making one bad decision in one case. It was an allegation that the county had a policy that directed prosecutors to act in that this court held in Estevez is that the county can't be held liable for that conduct because the state prosecutor there is engaged in a core prosecutorial function. He is operating in that role of prosecutor as advocate, and in that function, the prosecutor would be entitled to immunity precisely because he is operating as an agent of the state and not as an agent of the county. The same through line explains Eccles versus Parker, which concerned the institution of criminal proceedings, another core prosecutorial function, and it explains Kruger versus Riemer. This court's decision that address conduct in actually trying a criminal case, another core prosecutorial function of the prosecutor as advocate. That same line of reasoning also can be used to harmonize the two cases that Mr Mansfield relies upon, which are crane versus Texas and Turner versus Upton County. So looking to crane versus Texas as the first example, that was the case that concerned Dallas County's process for its clerk's office staff filling out paperwork in a particular way to issue misdemeanor misdemeanor capious in a way that this court ultimately determined was contrary to the law. The court held that it was appropriate for the county to bear responsibility for that conduct because it was not involved. It did not involve a core prosecutorial function that was not prosecutor as advocate. It was an administrative policy, a policy that controlled the conduct of non attorneys carrying out an administrative function, something that prosecutors would not traditionally be entitled before, which tells the court that that's not prosecutors acting as state agents. These air non attorney individuals acting in an administrative capacity. And even even if it had been a acting in an administrative capacity, the court recognized in Himmler that there will be times in the course of a criminal prosecution where a prosecutor acts in in roles that are outside the scope of that traditional prosecutorial capacity, either in an administrative function or the other example example given in Himmler is an investigatory function. So if, for example, a prosecutor is out interviewing witnesses and gathering facts, something much more akin to a law enforcement officer or a police detective, that's not core prosecutorial conduct. The prosecutor wouldn't be entitled to absolute immunity for that conduct. And so it would be, uh, it would be, uh, by to hold a county responsible for that conduct because the prosecutor isn't engaged in that or state function for which the state is ultimately liable. And the final example is the Turner case, and the same line of reasoning harmonizes Turner as well. That case involved the allegation of a conspiracy between the county sheriff as the ultimate repository of law enforcement power in the county with the district attorney. And the case ultimately turns on the fact that the district attorney was allegedly involved in this conspiracy. It is a patient idea, not vicarious liability based on the fact that the county employed the district attorney. That's the kind of respondee at superior liability that the Supreme Court outlawed with Manel, but which Mr Mansfield's theory of the case basically resurrect or resurrects or makes an end run around by making the county liable for the conduct of state functions simply because it's the county who happens to sign their paychecks, and therefore those individuals are, in some sense, represented. And so if the case proceeds forward on this, this second path, and if Mr Mansfield is ultimately successful, then the risk is not just that, um, uh, well, the risk is broader than the risk of overturning Alvarez. The risk is the foundational premise of, uh, absolute immunity that the Supreme Court announced in Imbler is undone. The reason that the Supreme Court extended absolute immunity prosecutors in Imbler is that the court said, Look, we understand this is tough medicine to tell an individual who is actually wronged by a state prosecutor that he doesn't have a section 1983 damages remedy, but it's still better than the alternative because the that prosecutors will continually operate in fear of retaliation and being held liable for money damages for conduct that they're carrying out in in furtherance of their state law duties to prosecute cases on behalf of the states which they represent. And so even though it's tough, the court said, We have to strike the balance on one side or the other. And here the benefits of immunity outweigh the cost. What Mr Mansfield's theory would allow plaintiffs to do is to make an end run around the policy choice that the Supreme Court made in Imbler and say that although this although the individual prosecutor cannot be held liable, and, of course, the state itself cannot be held directly liable under 1983 because the state is not a person. The of the prosecutor, nevertheless, subject the county to liability. And so all of the same concerns this this this interim effect that liability, the imposition of liability would have all of those concerns are still present on the prosecutor. Those chilling effects are still present. The only difference is the payor shifts from being taxpayer. If you suppose that you have a county policy and it's invalid, they but it's carried out that this invalidity is executed by individuals who are protected with absolute immunity. Are you suggesting then that even though it's county policy, um, that, um, you would have no Monell liability? I'm suggesting that the attempt to draw the quote county policy and quote state policy, which is actually what Magistrate Judge Lane did at the Rule 12 stage in this case, is asking the wrong question. And instead, the question needs to be what is the policy attempting to direct? If the policy is directing the performance of a core prosecutorial function, then yes, it is true that that the county cannot be held liable for that policy. And the proof of that is in these cases like Estevez, which addressed a county. I'm asking a more general question. That's not specific to this case, and that's the abstract proposition that that that you're suggesting that that Monell liability cannot arise when, although it's county policy, but it's executed by individuals such as prosecutors who enjoy individual absolute immunity. No, Your Honor, that's not. That's not the county's position. And again, I know that I'm saying. I'm saying that it will be clear, but you're not saying that that I'm really concerned about the direction of the law. Um, if you had a county policy, I don't suggest you do here. I think that's very difficult. That's a question. I'm gonna get to that. But if you did have a kind of policy that that, of course, you do have. You have a D. A. Who is an official, a policymaker of sorts. In any event, I suppose that you did have a guy. It was a county policy to do exactly this. And in other words, the fact that it's carried out by people with individual liabilities would not be an impediment to it, would it? Or would it? It's not the identity of the individuals carrying out the policy, Your Honor. I said the fact that they enjoy individual liability would would not would not insulate the county if it's otherwise was their policy. No, not not that backstanding alone, Your Honor. I think the key, the key distinguishing fact there is I just said your argument that's obtained here, but I just I want to get a baseline to start from. The broadest thing would be that there's no lot. There could be no liability period. Yeah, it's it's not the county's position, Your Honor, that the simple fact that an individual actor may have individual immunity necessarily immunizes the county from liability. It's the county or the county's liability from the these that something else would do for our policy from it. But but if you had a county policy and I could envision that with some counties that you might very well that's my question. I guess we don't have an answer to that. I'm doing my best. Let me try again. I appreciate that. I just trying to get a baseline for police to start from. If we assume that there is some county out there that that let's say has a policy that specifically directs its prosecutors to violate their Brady obligations, the prosecutors are obviously immune from individual liability for carrying out that policy. And then the county itself is not answerable under Section 1983, not because it is immune, but because that policy represents a directive of the state controlling a core prosecutorial function of state agents carrying out a state law function. And so I think the one of the ways the primary way actually that Magistrate Jeff Lane was led astray when he confronted this issue at 12 stage was that he was trying to parse this distinction between is it a county policy that's at issue or is it a state policy? Is it issue? And his conclusion was, if the district attorney sets the policy, then it must be a county policy for which the county can be held liable and not a state policy. But that's that's contrary to what this court held in Estevez, where again, the allegation was that there was a county wide policy in that three strikes in a discriminatory manner. The county D. A. So sorry, uh, the county does. I think I believe there is a certain amount of that salary that comes from a state coffer. But the paycheck is ultimately signed by the county and he's elected countywide. Yes. But it's not a guy, but he's not. He's not a male official. I get it. Your argument is because he's carried out a core function of enforcing the state law. That's correct. So it's not again. It's not the focus on the form of the individual. It's on the function being carried out. And so if the function being carried out is a core prosecutorial function, then that's a state official carrying out state obligations for which the state is responsible. If it is a cap, if it is that same official carrying out, uh, you know, an investigatory or an administrative policy, then as the court held in crane, that is a county policy for which the county can be held liable, notwithstanding whether the individual actor would have personal immunity from liability or not. Uh, I want to shift gears for a minute and talk about the Whaley case because I was concerned with the suggestion in Mr Mansfield's reply brief that the county is not distinguished Whaley. I thought we did in our group, but I want to address it again to be absolutely clear. Um, first, Whaley addresses of a factually distinguishable scenario in which there are threats to manufacture false evidence in order to bring false charges. That's the same kind of allegation that was present in the first Cole versus Carson case. Cold one also cited by Mr Mansfield. That's not what happened here. But second, to understand Whaley, you have to understand how the case concluded. So Whaley's argument in his writ of habeas corpus was that FBI agents had taken him into a room, threatened to throw him out a window and threatened to manufacture evidence that he injured his kidnapping victim in order to justify state prosecutors bringing capital offense charges against him. And he said, in response to that threat, he made a written confession. The Supreme Court in its decision says, Well, while we doubt that that's true, you have a right to go to a hearing to try to prove it. So the court sends the court conducts a hearing denies the writ. It goes to the Ninth Circuit, and the Ninth Circuit affirms and says that Whaley's guilty plea and his conviction are both valid because this coerced confession that was at the heart of his allegation was not used to convict him. In other words, that confession was not presented at a trial as evidence of his guilt. And this this sentence from Whaley that appears throughout Mr Mansfield's briefing about the idea that a confession obtained through coercion can be violative of due process immediately following that sentence, the Supreme Court cited two cases. One is Bram versus United States, and the other is Chambers versus Florida. And both of those cases concern the presentation of a coerced confession at trial in order to secure an individual conviction. And the Ninth Circuit obviously read the Supreme Court's opinion, read those citations, and it said if that's the rule that is sought to be applied to Whaley's claim, then he loses because he was not convicted on the basis of this written coerced confession that he gave the FBI agents who intimidated him. But he was convicted based on a guilty plea, a separate confession made to the court that was found to be knowing involuntary. And so the Ninth Circuit's holding there is consistent with what the Supreme Court said in its decision, and then subsequently denied cert following the Ninth Circuit's ultimate resolution in that case. So your position is that while a threat to manufacture fake evidence is a due process violation, actually creating or representing fake evidence is not a due process violation? No, certainly. If false evidence is actually presented and used to secure a conviction... In court, I understand that. But you're saying there's no violation if it's not actually used in court, if it's just given to defense counsel and plea negotiations? Yes, that is the import of Whaley, which is that the coerced confession, unless it is used against the defendant, is essentially ultimately harmless. If the to secure the conviction, then it's... What does it mean to be used against the defendant? I mean, if someone comes in with fake forensic reports, that leads the person to plead guilty. You're saying use has to be in court? Yeah, that was the rule that was the basis of the Supreme Court's decision in Whaley. Let me also clarify, in case it's not clear, that there was no creation of false evidence in this case, nor is there an allegation that false evidence  Well, they're orally... I mean, you're saying it's different... Orally, I thought the counties conceded that orally they misrepresented what the witness was going to say. No, no, no. So let me address that question very specifically. The county disputes that Mr. Mansfield was ever lied to about these two pieces of inculpatory evidence. One was a videotaped statement of the victim, and the second was a forensic report by a medical expert that was performed from an examination performed on the victim. Number one, the county disputes that those representations were ever made, because the only evidence that they were... You weren't summary judge. I mean, I thought that's being inferred in favor of the plaintiffs for our purposes now. Sure. So if you assume, contrary to the county's position, that the statements were made, then you have a United States versus Scruggs situation, where there is an ultimate correction of the representations that renders it not because of the guilty plea. So here, Mr. Mansfield and his attorney, especially, ultimately knew by the time they got to the plea decision, that number one, that videotape did not exist. And the reason they knew the videotape did not exist is because Mr. Mansfield's defense lawyer did what a good defense lawyer who thought such a videotape existed would do, and he filed a motion for its production. And in the resolution of that motion, the prosecutor represented to the court and to Mr. Mansfield's attorney that there was no such videotape. And the court, in signing an order granting the motion, wrote there was no videotape produced. So Mr. Mansfield's attorney knew the videotape didn't exist. The second piece of inculpatory evidence was this doctor's report. And the reason that Mr. Mansfield knew that that report did not exist is that as Mr. Mansfield's expert witness has testified in the case, the closed file policy, as it was practiced in Williamson County, routinely required prosecutors to disclose that type of material to defense lawyers, even without a request. I see my time has any further questions I can answer. I'll turn it back to Mr. Edwards. All right, rebuttal. Five minutes, Mr. Edwards. Thank you, Judge Costa. Briefly, turning back to Judge Higginbotham, where you asked where in the pleading we dealt with the court order, I direct the court to record on Appeal 25, in which we say that in preparation for trial, Mansfield's attorney, Stephen Seahall, filed pretrial motions, including a motion for evidence favorable to the defendant, which was filed on October 26, 1992. Similar motions had also been filed in the Morton case. On May 17, 1993, the trial court granted that motion and ordered the prosecution to disclose all exculpatory evidence. Paragraph 55, again, record on with county policies and practices. And just as he and the county had done in the Morton case, they violated this court order and their duty to do justice and failed to disclose that exculpatory evidence that would have exonerated Mr. Mansfield. I mean, in addition to the paragraph saying that they lied about evidence that do not exist, the Homoki case, which is cited in our briefs, speaks to this. This isn't 1928 pleading standards. This is notice pleading. None of this was a surprise to the defendants. It was all open. All these depositions were about it. Could plaintiffs have done a better job with their complaint? Sure. But that's not the standard for the court. With regard to my colleague's the Imbler case, it has absolutely no relevance to this court's decision. If a county has a policy that leads arguably absolutely immune prosecutors to violate the Constitution, of course it can be held liable because a county isn't entitled to absolute immunity. A county isn't entitled to qualified immunity. So whether or not this was administrative, investigative, or prosecutorial, those issues do not control. That is one of the reasons why this case was brought against the county. But that's a strategic issue. It does not bear on this particular issue. Let me ask you a question. What is the causal link here? What is your under Monet? There was a closed file policy which enabled prosecutors to lie and hide evidence. They did in fact lie and hide evidence in inducing Mr. Mansfield to plead guilty. As a consequence of being lied to, threatened with fabricated evidence, which is no different than what happened in Whaley. He was threatened. This child who could not testify, what he was told, she's adamant that you did it. That was a direct causal link to his plea. But without the closed file policy, none of this can happen. So in terms of Monet, there is a direct link. The policy which was known to the policymaker was the moving force of the constitutional violation, which is the violation of due process. As a result of the get a plea rather than let innocent people have their cases dismissed. These are both policies that were pled summary judgment evidence is there, which directly caused Mr. Mansfield to plead guilty in this case, and which were the direct cause of his involuntary plea. According to the Texas Tribunal, and very significantly, though I don't have the sites at my tip right now, each of the county's witnesses acknowledged that these lies and this failure to disclose evidence in violation of the court order caused Mr. Mansfield to plead guilty and were a violation of due process. Turning very briefly to Mr. Thompson's point about the Rule 12 motion, the county specifically asked Judge Lane not to rule on any issue other than the Alvarez issue, other than the due process cases, and Judge Lane took them up on their offer and didn't deal with that. Therefore, I don't think the court should delve into it. But if they're forced to, Crane and Turner are panel decisions that predate any argument that the panel decisions, much the same way they're criticizing us for suggesting Alvarez ought to be distinguished or changed in light of circuit court precedent and the Wilde case, they're asking you to do the same thing. And again, in those cases, the district attorney was engaged in a core prosecutorial function in the same way they did a fabrication. The quote is, the district attorney allegedly helped the sheriff manufacture evidence, then hid that fabrication while prosecuting the plaintiff. That's the Turner case. And I see my time is up. Absent additional questions, I want to thank the court for its time. All right. Thanks to both sides for the helpful arguments. The case is submitted. And that concludes today's arguments. Council may be excused.